UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES DISTRICT JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0637
MDD_DLBChambers@mdd.uscourts.gov

September 28, 2023

## LETTER ORDER

RE: *Mistral, Inc. v. Skydax, LLC*
DLB-21-1225

Dear Counsel:

This letter resolves the pending cross-motions for summary judgment.

This case involves allegations of breach of contract and fraud by two companies and their principals. Mistral, Inc. ("Mistral") has sued Skydax, LLC dba Synchro Machining ("Skydax"); Skydax's owner, William Richter; Pinnacle Resource Solutions, Inc. dba Synchro Machining ("Pinnacle"); and Pinnacle's owner, James Thai. Mistral alleges it contracted with Pinnacle and Skydax, both of which represented they do business as "Synchro Machining," to purchase adapter rings in accordance with the specifications in a contract between Mistral and the federal government. Mistral made partial payment for the adapter rings, waited for their delivery, and when they were not delivered, paid more money to obtain them from another source. Mistral seeks damages for breach of contract, fraud, and civil conspiracy. The counts relevant to the pending motions are: breach of contract against Skydax; fraudulent misrepresentation against Skydax; fraud against Richter; and civil conspiracy against Richter and Skydax. ECF 10 (am. compl.). Thai and Pinnacle, after initially responding to the amended complaint with a motion to dismiss by Thai and an answer by Pinnacle, have disappeared. The Court previously granted Mistral's motion for a default judgment against them. ECF 75.

After completing discovery on its claims against Skydax and Richter, Mistral filed a motion for summary judgment on its breach of contract claim against Skydax. ECF 73. Skydax and Richter opposed it and filed a cross-motion for summary judgment on the breach of contract, fraud, and conspiracy claims. ECF 79. Mistral filed a reply and opposition. ECF 85. Skydax and Richter represented on an April 20 conference call that the briefing was complete, but on May 1, 10 days after their reply in support of their cross-motion was due, they filed an additional brief. ECF 88. The defendants labeled the brief as a surreply, and they filed a motion for leave to file it. *Id.*; ECF 88-2. Mistral opposed the May 1 filing as untimely. ECF 90. The Court construes Skydax and Richter's filing as a reply and a motion for leave to file the reply 10 days late. The motion is granted, and the reply is accepted as filed.

**Standard of Review**

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When presented with cross-motions for summary judgment, the Court "must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997) (citation and internal punctuation omitted)). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The Court must "view the evidence in the light most favorable to the nonmoving party" and avoid "weigh[ing] the evidence or mak[ing] credibility determinations." *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017) (quoting *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015)) (internal quotation marks omitted). However, the Court also must abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)) (internal quotation marks omitted).

If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). A factual dispute is genuine only where there is sufficient evidence to permit a reasonable jury to find in the nonmoving party's favor. *Id.*; *see also Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019). "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Humphreys & Partners Architects*, 790 F.3d at 540 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)). "Instead, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, 'citing to particular parts of the materials of record.'" *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(c)(1)(A)).

**Discussion**

The Court has reviewed the amended complaint, the summary judgment briefing, and the exhibits. For the sake of judicial economy, the Court assumes the reader's familiarity with those filings and will not restate what the parties have clearly stated in their papers. Because there is a genuine dispute of material fact as to whether Skydax contracted with Mistral to provide adapter rings, the cross-motions for summary judgment on the breach of contract claim are denied. As for the fraud and civil conspiracy claims against Skydax and Richter, summary judgment is granted in their favor.

### Breach of Contract

To establish a breach of contract under Maryland law, Mistral must prove "a contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011), *aff'd*, 43

A.3d 1029 (Md. 2012)). Formation of a valid contractual obligation requires mutual assent (an offer and acceptance), an agreement definite in its terms, and sufficient consideration. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013).[1]

It is undisputed that, on May 7, 2020, Mistral submitted a purchase order for adapter rings to "Synchro Machining" at a Pennsylvania address affiliated with Pinnacle. ECF 73-5. The total price of the order was $134,680. The purchase order was signed on behalf of Synchro Machining and returned to Mistral. *Id*. On July 22, 2020, Pinnacle "DBA Synchro Machining" sent Mistral an invoice for the rings. ECF 85-2. As partial payment for the rings, Mistral sent a check for 10 percent of the purchase order, or $13,468, payable to "Synchro Machining" at Pinnacle's Pennsylvania address. ECF 73-6. The submission of the purchase order, Pinnacle's acceptance of the order, and the subsequent partial payment are evidence of a contract between Mistral and Pinnacle. *See Md. State Hwy. Admin. v. Brawner Builders, Inc.*, 242 A.3d 1188, 1190 (Md. Ct. Spec. App. 2020) (purchase order can demonstrate a contract), *aff'd sub nom. Brawner Builders, Inc. v. State Hwy. Admin.*, 258 A.3d 217 (Md. 2021); *Cambridge Techs., Inc. v. Argyle Indus., Inc.*, 807 A.2d 125, 127 (Md. Ct. Spec. App. 2002) (parties' "contract was set forth in Purchase Order"); *USEMCO, Inc. v. Marbro Co.*, 483 A.2d 88, 94 (Md. Ct. Spec. App. 1984) (purchase order can serve as offer, in which case a contract exists if the other party accepts the offer). There is no evidence that Mistral sent the purchase order to Skydax or that Skydax signed the purchase order, issued the July 2020 invoice, or received the initial payment from Mistral. The undisputed evidence shows Skydax was not formed until December 17, 2020, five months after the purchase order was submitted and signed. ECF 79-7. At that time, it was incorporated as a Michigan corporation, located at 48893 West Road, Wixom, Michigan 48393. *Id*.

But the story does not end there. On January 15, 2021, Richter emailed a company called Sales & Engineering from his Skydax email address and included a Skydax signature block in his email. ECF 73-8, at 2. He stated that Skydax "received a contract to produce some parts that need to have a coating applied . . . around the ring of the part," and he requested a quote for the coating. *Id*. In February 2021, Skydax registered to do business as "Synchro Machining," ECF 79-4, the same trade name used by Pinnacle. Richter testified at deposition that he adopted the trade name "Synchro Machining" for Skydax in the "hopes that Mr. Thai could give [Skydax] some contacts in the area and also [Skydax] could give him some contacts in the area and it would look -- so [Skydax] could have more of a seamless look for his contracts coming in just so [Skydax] would get better contracts." ECF 73-4, at 6 (Richter Dep. 15:8–16). Richter testified that it "was a deliberate choice to have the same trade name." *Id.* (Richter Dep. 16:3–5).

Then, in March 2021, Richter communicated with Mistral about the contract for adapter rings. On March 3, 2021, Skydax sent Mistral an invoice for $207,480, which purported to be the balance owed under the purchase order (including the original charge of $134,680 and an additional charge of $72,800 caused by "Mistral Purchase Order hold delays"). ECF 10-4, at 2. The invoice, from "Skydax LLC DBA Synchro Machining," had Skydax's Michigan address on it. *Id*. On March 11, 2021, Jordan Andrew of Mistral wrote Richter:

---

[1] The parties agree that Maryland law applies to the breach of contract and fraud claims and that the Uniform Commercial Code governs contracts for sale of goods under Maryland law. ECF 73-1, at 9; 79-1, at 17, 22; ECF 85, at 14.

> We agree to the proposed terms provided:
>
> 1) This Coming Wednesday I will personally inspect 50 non-painted parts
> 2) If all parts conform 100%, payment will be made and a good RFQ will be issued to offset our additional costs
> 4) [sic] Additional cost in packing we, at Mistral, will be responsible for.
> 5) Delivery of the contracted 728 parts NLT May 31, 2021 allowing for any type of paint repair, packing, packing materials, and scheduling of truck and transportation.

ECF 10-3, at 21. In response the next day, Richter, using his Skydax email account and a Skydax signature block, thanked him and told him he was "looking forward to meeting him face to face." *Id.* He copied Thai. *Id.*

On March 17, 2021, Andrews sent Richter a draft corrected invoice dated March 17 from "Skydax DBA Synchro Machining," with Skydax's Michigan address on it. ECF 79-5, at 1–2. The proposed corrected invoice instructed Mistral to "Remit to: Skydax DBA Synchro Machining" and provided a routing and account number. ECF 79-5, at 2. "Richter incorporated the information provided by Mr. Andrews into Skydax's accounting system, and emailed a corrected invoice from his Skydax email the following day, March 18, 2021." ECF 79-1, at 9 (defs.' stmt. of facts). The "corrected" invoice, which Richter backdated to March 3, 2021, was for $121,212 reflecting the actual remaining balance. ECF 10-5, at 2 (email), 3 (invoice).[2] The corrected invoice, like the original invoice, was from "Skydax" at the company's Michigan address. *Id.* at 3 (corrected invoice); *see* ECF 10-4, at 2 (original invoice). Richter sent this invoice to Mistral from his Skydax email address with the company's Michigan address in the signature block. ECF 10-5, at 2. In his email, Richter said, "Here is our corrected invoice to Mistral." *Id.* He copied Thai on the email. *Id.* On March 22, Andrews emailed Richter at his Skydax email address to accept the invoice; he also copied Thai. ECF 79-5, at 3; ECF 10-3, at 16.

On May 10, 2021, attorney John G. McGill wrote to Mistral's counsel that "Synchro/Skydax still considers the 3/3/21 invoice due and payable," stating, in part:

> Synchro Management informs me that the parts in question have been available to Mistral or its agents to inspect. I have been informed the parts were made available for viewing by Mistral as recently [as] March 2021. At this time, I am informed that the parts are currently at a paint vendor and due to ongoing Covid restrictions I am not sure what persons, if any, are able to enter the paint facility.

ECF 85-6.[3]

---

[2] The parties attached the March 18 email to their briefs. ECF 73-7, at 2; ECF 79-5, at 3–4. For convenience, the Court cites only to the copy attached to the amended complaint, ECF 10-5, at 2.

[3] The defendants argue that McGill's letter is inadmissible hearsay. ECF 88, at 7. On summary judgment, evidence does not need to be admissible; the requirement is that the party be able to present the material "in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The defendants have not shown that Mistral could not present McGill's statement in an admissible format.

Richter takes the position that Skydax never entered into a contract with Mistral. He offers evidence that, in the spring of 2021, he was merely helping Thai and Pinnacle out with administrative tasks by issuing invoices to Mistral. *See* ECF 73-4, at 11 (Richter Dep., stating that he corresponded on behalf of Thai to "help[] Mr. Thai out because he's not good at administrative stuff" and Richter was "trying to be the conduit for communication for him"); ECF 79-3 (Richter decl. that Skydax did not contract with Mistral). He also offers evidence that McGill did not represent Skydax, ECF 79-3, ¶ 23, and therefore McGill's email to Mistral's counsel stating "Synchro/Skydax still considers the 3/3/21 invoice due and payable" does not show that there was a contract between Mistral and Skydax. And, Mistral's Plant Manager Michael Brown stated that Mistral contracted with Pinnacle and that "Mistral understood that when it was dealing with Skydax and Mr. Richter, it was dealing with the party with which it contracted." ECF 9-1, ¶ 7 (Brown Aff.).

On this record, a genuine dispute exists as to whether Mistral entered into a contract with Skydax. A factfinder reasonably could find that Mistral contracted only with Pinnacle. The same factfinder could conclude that Skydax contracted with Mistral in March 2021 by virtue of Andrew's March 11 email memorializing the terms and Skydax's March 18 response email, attaching the corrected invoice or by virtue of Skydax's March 18 email and corrected invoice and Andrew's March 22 email accepting the invoice. *See Md. Supreme Corp. v. Blake Co.*, 369 A.2d 1017, 1025 (Md. 1977) (noting "the contract may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract, and that an agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined" (citing U.C.C. § 2-204(1), (2))).

As for the other two elements of a breach of contract claim—breach and damages—the parties do not contest that the adapter rings were not delivered, and the Court finds there is a genuine dispute of material fact as to damages.

Neither party is entitled to judgment as a matter of law on the breach of contract claim.

**Fraud**

Mistral asserts, in the alternative to its breach of contract claim against Skydax, fraud claims against Richter and Skydax. ECF 10, ¶¶ 94, 122. If there was no contract between Mistral and Skydax, Richter and/or Skydax could be held liable for fraud.

To prevail on a claim for fraud under Maryland law, a plaintiff must establish

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Moscarillo v. Pro. Risk Mgmt. Servs., Inc.*, 921 A.2d 245, 254 (Md. 2007) (quoting *Nails v. S & R*, 639 A.2d 660, 668–69 (Md. 1994)). The plaintiff also must meet the heightened pleading

standard under Federal Rule of Civil Procedure 9(b) by "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). These circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

Mistral cannot establish every element of a fraud claim against Richter. Starting with the first element—false representation—Mistral identifies two potential false statements. First, Mistral claims the invoices that Richter sent to Mistral in March 2021 are false statements. Mistral claims that if Richter was not communicating on behalf of Skydax when he sent the invoices, then by issuing them, Richter falsely represented that, if Mistral continued to make payments, the goods would be delivered by Skydax. On their face, the invoices do not contain any express false statements made by Richter. But when they are considered in the context of the contemporaneous communications between Richter and Andrews, and when the facts are viewed in the light most favorable to Mistral, a reasonable factfinder could find that Richter falsely represented that Skydax would deliver parts to Mistral.

Having set forth enough evidence of a viable false statement—the invoices Richter sent to Andrew in March 2020—Mistral loses footing on the third and fifth elements. There is no record evidence from which a reasonable factfinder could conclude that Richter misrepresented the intention to deliver adapter rings to Mistral for the purpose of inducing Mistral not to seek goods elsewhere. Given that Richter could not benefit financially until Mistral inspected the goods, Mistral has not shown any reason for Richter to induce Mistral to wait for goods that he never would deliver. *See* ECF 10-3, at 21 (Mistral's statement that "payment will be made" if, on inspection of "50 non-painted parts . . . all parts conform 100%"). And finally, Mistral has not identified evidence of compensable injury that resulted from the false statements. Mistral has submitted evidence that, between November 2021 and April 2022, it paid significantly more to another vendor for the adapter rings after it did not receive the rings from Synchro Machining. ECF 73-12. But Mistral has not identified any evidence that the replacement adapter rings were more expensive because of Mistral's reliance on Richter's representations in March 2021. The replacement rings may have cost the same in March 2021 as Mistral paid for them between November 2021 and April 2022.

The second allegedly false statement was made by attorney John McGill on May 10, 2021. McGill told Mistral: "I am informed that the parts are currently at a paint vendor and due to ongoing Covid restrictions I am not sure what persons, if any, are able to enter the paint facility." Mistral argues this statement was false—that the parts were not, in fact, at the paint vendor. But McGill preceded the challenged representation by saying, "*I am informed* that the parts are currently at a paint vendor." ECF 85-6 (emphasis added). Mistral has not put forth evidence that McGill was not, in fact, informed of those things. Beyond that, Richter disputes that McGill represented him or Skydax when McGill made the statement. According to a declaration Mistral submitted in support of its request for permission for alternate service, McGill represented Pinnacle, ECF 27-4, ¶ 6. And McGill does not state who informed him the parts were at the paint vendor. Immediately preceding that statement, McGill said "Synchro Management" informed him "that the parts in question have been available to Mistral or its agents to inspect." "Synchro Management" could have referred to Pinnacle or Thai, and it could have been Pinnacle or Thai

that informed McGill about the parts' status. Even if McGill did represent Richter or Skydax, Richter himself did not make the statement, and Mistral has not offered evidence that Richter was the one who informed McGill about the status of the parts or that Richter authorized McGill to make the statement on his behalf. There is insufficient evidence to support a finding that that Richter, through McGill, falsely represented that the parts were at the paint vendor.[4]

Richter is entitled to summary judgment on the fraud claim.

Skydax also is entitled to summary judgment on the fraud claim. The claim relies exclusively on statements Skydax made through Richter and McGill. If their communications were on behalf of Skydax, then Mistral's complaint is that Skydax promised to provide adapter rings but failed to do so. Misrepresentations in support of a fraud claim cannot be "merely promissory in nature" or "expressions as to what will happen in the future." *Sass v. Andrew*, 832 A.2d 247, 265 (Md. Ct. Spec. App. 2003) (quoting *Levin v. Singer*, 175 A.2d 423, 432 (Md. 1961)); *see Kerr v. Johns Hopkins Univ.*, No. L-10-3294, 2011 WL 4072437, at *7 (D. Md. Sept. 12, 2011) (quoting *Sass*), *aff'd sub nom. Kerr v. The Johns Hopkins Univ.*, 473 F. App'x 246 (4th Cir. 2012). Under Maryland law, a "failure to fulfill a promise is merely a breach of contract," and the only remedy lies in an action for breach of contract. *Sass*, 832 A.2d at 265 (quoting *Appel v. Hupfield*, 84 A.2d 94, 96 (Md. 1951)). Mistral cannot prevail on its fraud claim against Skydax because the alleged misrepresentations were promises to perform that give rise to a breach of contract claim, not false statements that give rise to a fraud claim. *See id.*; *Kerr*, 2011 WL 4072437, at *7. Skydax is entitled to summary judgment on Mistral's fraud claim.

**Civil Conspiracy**

Because the fraud claims against Skydax and Richter fail, the conspiracy claim against them also fails. Civil conspiracy is "the 'combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.'" *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)). To state a claim for civil conspiracy, the plaintiff must allege other tortious conduct. *See Arkansas Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 647 (D. Md. 2020) ("Under Maryland law, there is no separate tort for civil conspiracy; instead, a civil conspiracy theory merely serves to extend liability to the co-conspirators after some other tortious conduct is established."). The Fourth Circuit and the Maryland Supreme Court have held that a plaintiff cannot prevail on a claim for civil conspiracy under Maryland law "in the absence of other tortious injury to the plaintiff." *Marshall*, 758 F.3d at 541 (quoting *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1045 (Md. 1995)). Because Mistral's fraud claims against Skydax and Richter fail as a matter of law, the civil conspiracy claim based on fraud fails as well.

---

[4] Even if McGill's statement was false and attributable to Richter or Skydax, Mistral has not established any compensable injury that resulted from it.

**Conclusion**

      Mistral's motion for summary judgment on its breach of contract claim against Skydax, ECF 73, is denied.  Skydax and Richter's cross-motion for summary judgment, ECF 79, is denied as to the breach of contract claim and granted as to the fraud and civil conspiracy claims.  Skydax and Richter's motion for leave to file their reply 10 days late, ECF 88-2, is granted, and the reply, ECF 88, is accepted as filed.  A call is scheduled for October 17, 2023 at 1:30 p.m. to schedule trial.  My chambers will circulate call-in information.

      Although informal, this letter is an Order of the Court and shall be docketed as such.

      Sincerely,

Deborah L. Boardman
United States District Judge